**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | **: 3:20-CR-181** |
| **v.** | **: (JUDGE MARIANI)** |
| | : |
| **DAVID TORRES,** | : |
| | : |
| **Defendant.** | : |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Presently before the Court is Defendant David Torres' "Motion to Suppress

Evidence" (Doc. 60).  The Superseding Indictment (Doc. 46) charges Defendant with two

counts of Distribution of Fentanyl and Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(C), Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(B), Possession of Firearm in Furtherance of a Drug Trafficking

Crime in violation of 18 U.S.C. § 924(c), and Felon in Possession of Firearm and

Ammunition in violation of 18 U.S.C. § 922(g)(1).  (Doc. 46 at 1-5).  The present Motion

seeks to suppress all evidence recovered as a result of the execution of the search warrant

for the residence at 66 Church Street.  (Doc. 60 at 3).

The Court held an evidentiary hearing on November 4, 2021.  Neither the

Government nor the Defendant presented witnesses; rather they presented oral argument

regarding the sufficiency of the Affidavit of Probable Cause submitted in support of the

search warrant at issue.  At the close of the Hearing, the Court stated that it would issue an

opinion based on the parties' written submissions and the arguments presented at the

Hearing. For the reasons set forth below, the Court will deny Defendant's Motion.

## II. FACTUAL BACKGROUND

Because the Court's Opinion is based on the Affidavit of Probable Cause submitted

in support of the search warrant for 66 Church Street in Wilkes-Barre, Pennsylvania, the

unredacted facts contained therein are included here in full:

1. Your affiants, Trooper Jeffrey LAMM and TFO Jeffrey FERENCE deposes and states the following:

I, Jeffrey Lamm have been employed by the Pennsylvania State Police for the past 20 years. Your affiant has been assigned to the Troop P Vice and Narcotics Unit for approximately 17 years. Prior to that your affiant was a member of the Pennsylvania State Police/Bureau of Drug Law Enforcement for 1 year. Prior to that your affiant was a member of the Pennsylvania State Police Patrol Unit for 2 years. During this time, your affiant has been involved in no fewer that 300 investigations into violations of Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act. Your affiant has made in excess of 15 arrests for Controlled Substances in the past 12 months. Your affiant has made in excess of 15 undercover purchase of various controlled substances within the past 12 months. Your affiant has been involved in the execution of over 100 search warrants. Your affiant has also testified as an expert witness in Luzerne County Common Pleas Court on several occasions reference drug trafficking and local narcotics dealing. Your affiant has received additional training related to conducting narcotics investigations, drug trafficking trends, drug sales and proceeds, drug concealment methods, and search and seizure laws. Your affiant has received this training from the Drug Enforcement Administration, The Pennsylvania Narcotics Officers Association, The Pennsylvania National Guard Counterdrug Training Center, and the Pennsylvania State Police

I, Jeffrey Ference have been employed by the Wilkes-Barre City Police Department for approximately 7 years. Prior I have worked as a Law Enforcement Officer in Luzerne County since 2001. As of July 2013 I have been assigned to the Wilkes-Barre Police Department Anti-Crime Tactical

Patrol Unit.  Prior to my position within the Anti-Crime Division I was assigned as a patrol officer for approximately 4 years.  Since 2017 I have been assigned to the Luzerne County Drug Task Force and have attended numerous training and advancement courses on narcotics investigations.  During this time I have been involved in hundreds of investigations into violations of the Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act.  I have been involved in hundreds of cases that have led to arrests, convictions, seizures of large quantities of narcotics and proceeds from drug dealing.  I have cultivated informants, conducted interviews, participated in surveillance and participated in controlled purchases.  I have been an affiant on many search warrants, which have led to the seizure of controlled substances and prosecution of the defendants involved.

2. Your affiants, during the course of their law enforcement career, have had extensive experience into the investigation of persons both manufacturing, selling, buying, or using Controlled Substances.  Based on your affiants training and experience, your affiant knows:

a. That it is common for persons in the business of selling and/or manufacturing narcotics to use third persons as "go-betweens" or "middlemen" to conceal their identity, avoid detection, and distance themselves from the illicit activity in case of arrest or apprehension.

b. That it is common for drug traffickers and/or manufacturers to place registrations of their vehicle, the leases to their residences and the utilities supplying their residences in other individual's names.  Many times, these individuals include the trafficker's relatives and associates.  Traffickers will do this for many reasons: The traffickers may be unemployed and have bad credit, resulting in the trafficker's inability to apply for an apartment lease, a car loan or residence utilities.  The trafficker may also want to hide the actual location of their residence (where both drugs and drug proceeds are stored and/or manufactured) to avoid detection by law enforcement officers and also to distance themselves from any illicit activity that may be occurring at or near the residence.

c. That it is common for drug traffickers/manufacturers to maintain in their residences, or insecure places in their residence or third-party residence, or on their persons: Controlled Substances, books, records, receipts, notes and ledgers relative to the transportation, sale, distribution, manufacturing and ordering of controlled substances.  Additionally, these traffickers will often

maintain in their residences or on their persons: paraphernalia for cutting, packaging, weighing and distributing Controlled Substances. This paraphernalia includes but is not limited to: manual and electronic scales, heat sealers, plastic bags including Ziploc bags, and drug packaging material.

d. That drug traffickers/manufacturers often possess: records, notes, telephone/address books and "o" sheets; that list by name, address and telephone number the trafficker's source of supply, distributors and customers relative to drug trafficking. Furthermore, the trafficker will often utilize computers and cellular telephones to maintain contact with these drug associates.

e. That it is common for persons involved in the selling of narcotics from residences to conceal narcotics in residence in spaces not readily visible to persons. Narcotics are hidden in any space within/on/around residence where they may fit to avoid being visible and detected. Such places include but not limited to hidden walls sewer pipes, drainage gutter, garbage cans, cupboards, cabinets, toilets, closets, ceilings, steps, clothing, appliances, floors, walls, tubs, showers, window frames, and furniture.

f. That drug traffickers must maintain on hand large amounts of U.S. Currency, usually the proceeds of drug transactions, in order to maintain and finance their ongoing drug business. These traffickers will often maintain firearms or other weapons within their residences or on their persons to protect and secure drugs as well as drug proceeds.

g. In early December of 2019 your affiants interviewed CI 3210-19-0508 in reference to purchasing heroin and crack cocaine from David TORRES aka "Reem" aka "Bobby". During this interview the CI advised your affiants that he/she would be able to purchase either substances from TORRES and has done so in the past. A current photograph of TORRES was shown to the CI and he/she identified the male depicted in the photograph as David TORRES aka "Reem" aka "Bobby".

h. On December 06, 2019 in the early afternoon, I received a phone call from CI 3210-19-0508. He/She related to me that TORRES was driving a black Nissan Altima displaying Pennsylvania registration LCR4623 and that he was currently in the area of the South Main Plaza on South Main Street in Wilkes-Barre City, Luzerne County. Surveillance units were immediately summoned to that area and located the unoccupied black Nissan Altima. A check of the

vehicle's registration plate revealed it was an Enterprise rental vehicle. After approximately 20 minutes, TORRES was observed entering the vehicle. Surveillance units followed TORRES throughout the day and ultimately followed him to 66 Church Street Wilkes-Barre City, Luzerne County.

i. On December 06, 2019, Troop P Vice Unit along with Luzerne County Drug task force conducted a controlled purchase of crack cocaine and heroin/fentanyl from David TORRES from 66 Church Street Wilkes-Barre City, Luzerne County. On this date, the CI placed a cellular telephone call to TORRES at your affiants request and in our presence. A male, identified by the CI as TORRES, answered the phone. During the conversation the CI ordered heroin and crack cocaine from TORRES. TORRES related to the CI that he would meet him/her on South Main Street. Immediately after the phone conversation surveillance officers, already positioned at 66 Church Street, observed TORRES exit the residence and enter the black Nissan Altima. The CI was searched for narcotics and/or contraband with negative results and furnished with State Police pre-recorded buy money. The CI was then driven by your affiants to the area and additional surveillance units were put in place. TORRES was followed from 66 Church Street to the CI's location. The CI entered the black Nissan Altima and they drove around the immediate area. After approximately 1 minute the CI was observed exiting the black Altima. Your affiants immediately met with the CI and he/she handed your affiant suspected crack cocaine and heroin/fentanyl. The CI was then driven to an undisclosed location and again searched for narcotics and/or contraband with negative results. The CI advised your affiant that once inside of the vehicle he/she handed the pre-recorded money to TORRES in exchange for the crack cocaine and heroin/fentanyl.

The suspected crack cocaine and heroin/fentanyl purchased both field tested positive for controlled substances.

The suspected crack cocaine and heroin/fentanyl were entered into evidence at Wilkes-Barre Police Headquarters.

j. On December 12, 2019, Troop P Vice Unit along with the Luzerne County Drug task force conducted a second controlled purchase of crack cocaine and heroin/fentanyl from David TORRES from 66 Church Street Wilkes-Barre City, Luzerne County. On this date, the CI placed a cellular telephone call to TORRES at your affiants request and in our presence. A male, identified by the CI as TORRES, answered the phone. During the conversation the CI

ordered heroin and crack cocaine from TORRES. TORRES related to the CI that he would meet him/her on Pennsylvania Avenue in Wilkes-Barre City, Luzerne County.   Approximately 15 minutes later, surveillance officers positioned at 66 Church Street, observed TORRES exit the residence and enter the black Nissan Altima with PA registration LCR4623.  The CI was searched for narcotics and/or contraband with negative results and furnished with State Police pre-recorded buy money.  The CI was then driven by your affiants to the area and additional surveillance units were put in place.  TORRES was followed from 66 Church Street to the CI's location.  The CI entered the black Nissan Altima and after approximately 1 minute the CI was observed exiting the black Altima.   Your affiants immediately met with the CI and he/she handed your affiant suspected crack cocaine and heroin/fentanyl.  The CI was then driven to an undisclosed location and again searched for narcotics and/or contraband with negative results.  The CI advised your affiant that once inside the vehicle he/she handed the pre-recorded money to TORRES in exchange for the crack cocaine and heroin/fentanyl.

The suspected crack cocaine and heroin/fentanyl purchased both field tested positive for controlled substances.

The suspected crack cocaine and heroin/fentanyl were entered into evidence at Wilkes-Barre Police Headquarters.

k. Your affiants respectfully request to serve a search warrant at 66 Church Street Wilkes-Barre City, Luzerne COunty in furtherance of this investigation.

(Doc. 62-1, Affidavit of Probable Cause, 3-5).

Investigators obtained a search warrant for 66 Church Street on December 12,

2019 from Magisterial District Judge Thomas Malloy and law enforcement executed

the search warrant on December 13, 2019.  (Doc. 62 at 5).

### III. ANALYSIS

Defendant argues, "[t]he search of 66 Church Street was unlawful as there was no

connection between the alleged illegal activity and the residence."  (Doc. 61 at 4).

6

Defendant claims that the Affidavit of Probable Cause for the search warrant failed to

establish a sufficient nexus between Defendant's alleged criminal activity and the 66 Church

Street residence and the evidence obtained during the execution of the warrant should be

suppressed. (*Id.* at 8).

> The Fourth Amendment guarantees
>
> The right of the people to be secure in their persons, houses, papers, and
> effects against unreasonable searches and seizures, shall not be violated, and
> no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend. IV.  "To find probable cause to search, there needs to be a 'fair

probability that contraband or evidence of a crime will be found in a particular place.'"

*United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S.

213, 238 (1983)).  Probable cause is a "fluid concept" that is fact-specific and "not readily, or

even usefully, reduced to a neat set of legal rules."  *United States v. Jones*, 994 F.2d 1051,

1056 (3d Cir. 1993) (quoting *Gates*, 462 U.S. at 232).

Where, as here, a court is presented with a challenge to a magistrate judge's

determination of probable cause in the issuance of a warrant, it must limit its review to an

inquiry of whether "the magistrate had a substantial basis for concluding that probable

cause existed."  *Id.* at 1055; *see Gates*, 462 U.S. at 236 ("A magistrate's determination of

probable cause should be paid great deference by reviewing courts." (citations omitted)).

The court must read the affidavit of probable cause submitted in support of the search

warrant in its entirety and "in a commonsense and nontechnical manner." *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (citing *United States v. Conley*, 4 F.3d 1200, 1206 (3d Cir 1993)). "In making this determination, the Court confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record.'" *Id.* (quoting *Jones*, 994 F.2d at 1055).

Here, to uphold Magisterial District Judge Malloy's determination of probable cause, the Court must determine whether he had a substantial basis to conclude that drug-related evidence, including but not limited to drugs, drug proceeds, and drug paraphernalia, would be found at the 66 Church Street residence. The Court finds that in issuing the search warrant for 66 Church Street, Magisterial District Judge Malloy had a sufficient basis to conclude probable cause so existed.

As previously noted herein (*supra* p. 7), to find probable cause to search, there must be "a fair probability that contraband or evidence of a crime will be found in a particular place." *Burton*, 288 F.3d at 103. This analysis focuses on the nexus between the illegal activity and the place to be searched. *Id.* "If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases." *Jones*, 994 F.2d at 1055-56. More specifically, it is reasonable for a magistrate to infer that drug-related evidence would be found at the residence of an individual involved in drug dealing. *United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 1993); *see also Whitner*, 219 F.3d at 298 (collecting cases).

8

It is well settled that "direct evidence linking the residence to the criminal activity is not required to establish probable cause." *Burton*, 288 F.3d at 103. "[P]robable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested." *Id.*; *see also Jones*, 994 F.2d at 1056 (explaining that "probable cause can be, and often is inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." (internal citations and quotations omitted)).

In this case, the Affidavit of Probable Cause contains direct evidence that establishes a nexus between Defendant and 66 Church Street. The Affidavit of Probable Cause lists three instances in which surveillance officers observed Defendant either arrive at or depart from 66 Church Street in Wilkes-Barre, Pennsylvania: (1) on December 6, 2019, surveillance units observed Defendant arrive at 66 Church Street after following him throughout the day (2) on December 6, 2019, surveillance units observed Defendant leave 66 Church Street after receiving a phone call from a confidential informant and arranging an alleged drug transaction; and (3) on December 12, 2019, surveillance units observed Defendant leave 66 Church Street 15 minutes after a phone call with a confidential informant arranging another alleged drug transaction. (Doc. 62-1, Affidavit of Probable Cause, at 4-5). On two of these occasions, surveillance units observed Defendant leave 66 Church Street immediately before conducting alleged drug transactions. (*Id.*). Accordingly,

9

the Affidavit of Probable Cause contains direct evidence connecting Defendant to 66 Church Street.

In addition to the direct evidence linking Defendant's alleged drug activities to 66 Church Street, the circumstantial evidence included in the Affidavit of Probable Cause demonstrates that the magistrate had more than sufficient grounds to find that probable cause existed.  It is reasonable for a magistrate to infer that drug-related evidence would be found at the residence of an individual involved in drug dealing.  *Hodge*, 246 F.3d at 306; *see also Whitner*, 219 F.3d at 298 (collecting cases).  This inference is based on evidence supporting the following premises: "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) the home contains contraband linking it to the dealer's drug activities." *Burton*, 288 F.3d at 104.  Each premise is discussed in turn.

First, the Affidavit describes two alleged controlled purchases of crack cocaine and heroin/fentanyl that were observed by surveillance units and arranged by a confidential informant at the request of the affiants.  It is reasonable to infer from these events that Defendant is a drug dealer.  It is also reasonable to infer from the fact that a "specific drop off point" was arranged that Defendant "was familiar with drug transactions."  *See Whitner*, 219 F.3d at 298 ("Additionally, it is reasonable to infer from the fact that such a large quantity was entrusted to Whitner and that he had arranged a specific drop off point, that he was familiar with drug transactions.").  The fact that an informant organized two alleged drug

10

transactions with Defendant at a specific time and place suggests that Defendant was both

familiar with and had experience in drug transactions.  *See Hodge*, 246 F.3d at 306 ("The

fact that an informant, whose tip was corroborated by what actually happened, told police

that Hodge would be delivering cocaine at a particular time and location suggests both that

Hodge's drug activities were organized and that Hodge was sufficiently involved in the drug

trade that others knew of his activities.").  Furthermore, Defendant drove a rental car, which

is "common practice in the drug trade" because rental cars are not subject to forfeiture.  *Id.*

(citing *United States v. $32,310.00*, 1988 WL 169271, at *7 (D.N.J. June 23, 1988)).

Therefore, Magisterial District Judge Malloy had a substantial basis to conclude that

Defendant was a drug dealer.

Second, the Affidavit of Probable Cause contains sufficient evidence to infer that

Defendant possessed or was domiciled at 66 Church Street.  As previously discussed,

surveillance officers observed Defendant arrive at or depart from 66 Church Street three

separate times, two of which occurred immediately before Defendant conducted alleged

drug transactions. *See United States v. Walker*, 776 Fed. Appx. 784, 786 (3d Cir. 2019)

("He was seen leaving the house immediately before selling drugs to the informant,

supporting the inference that drugs were being stored there.").  The Affidavit also states that

Defendant parked his rented black Nissan Altima at or near 66 Church Street, which is

compelling evidence that Defendant either possessed or was domiciled at 66 Church Street.

*See Burton*, 288 F.3d at 104 ("More importantly, the best evidence that the North Garnet

11

Street property was Burton's was that he parked his Maxima in close proximity to the house."). Viewed in a commonsense manner, the facts and inferences derived therefrom could reasonably lead the magistrate judge to find that Defendant either possessed or was domiciled at 66 Church Street.

Finally, the Affidavit contains ample evidence to infer that 66 Church Street contained contraband that would link the property to Defendant's alleged drug activities. As an initial matter, a magistrate "'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *Hodge*, 246 F.3d at 305-06 (quoting *Whitner*, 219 F.3d at 296). The magistrate judge "may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Whitner*, 219 F.3d at 296. In this case, the affiants are experienced law enforcement officers with significant experience and training in the investigation of drug-related crimes. (Doc. 62-1, Affidavit of Probable Cause at 3). The affiants explained where suspected drug traffickers and manufacturers keep evidence, what type of evidence is generally recovered, and they described other commonalities among those in the drug trade that they had reason to believe would be present in this case as well. (*Id.* at 3-4); *see Walker*, 776 Fed. Appx. at 786 ("Finally, the affidavit provides that Weaver,

12

an officer with substantial experience and specialized training in narcotics investigations, believed that the residence was being used for the storage and distribution of drugs.").

Additionally, Defendant was suspected of drug-related crimes and law enforcement obtained the search warrant to further the investigation into Defendant's alleged drug activities. (*See generally* Doc. 62-1, Affidavit of Probable Cause). The Third Circuit has explained that "evidence of involvement in the drug trade is likely to be found where the dealer resides." *Whitner*, 219 F.3d at 297 (collecting cases). This is because "evidence associated with drug dealing needs to be stored somewhere, and [a] dealer will have the opportunity to conceal it in his home." *Id.* This inference is even stronger where, as here, Defendant "was seen leaving the house immediately before selling drugs to the informant." *Walker*, 776 Fed. Appx. at 786. Moreover, the 66 Church Street property was located in Wilkes-Barre, which is the same city in which the alleged drug transactions between Defendant and the confidential informant took place, "rendering [66 Church Street] a more likely repository of his drug-related paraphernalia." *See Hodge*, 246 F.3d at 307.

Upon consideration of the nature of the crime of which Defendant was suspected, the type of evidence sought by the search warrant, including controlled substances, drug paraphernalia, and other drug-related evidence, and the other allegations contained in the Affidavit of Probable Cause, the magistrate judge had a substantial basis to conclude that evidence of Defendant's alleged drug activities would be found at 66 Church Street.

Evaluating the entirety of the Affidavit of Probable Cause in support of the search warrant for 66 Church Street in a commonsense manner, the Court finds that it provided a substantial basis for the magistrate judge to conclude that evidence of drug dealing would be found at 66 Church Street and that a sufficient nexus existed between 66 Church Street and Defendant's allegedly illegal activities.  Therefore, Defendant's Motion to Suppress will be denied.

## IV. Conclusion

For the aforementioned reasons, Defendant Teter's Motion to Suppress Evidence (Doc. 60) will be denied.  A separate Order follows.

Robert D. Mariani
United States District Judge

14